Richard R. **VIEAU** and Robert A. Vieau, Plaintiffs/Appellants,

v.

**JAPAX, INC.**, Japax Scientific Corporation, and Textron, Inc., Defendants/Cross-Appellants.

Appeal No. 86–773/774.

United States Court of Appeals, Federal Circuit.

June 16, 1987.

---

Anthony S. Zummer, McWilliams, Mann, Zummer & Sweeney, Chicago, Ill., argued, for plaintiffs/appellants. With him on the brief was Dennis M. McWilliams. Also on the brief was Hugh J. McGuire, Fisher & McGuire, of Troy, Mich.

Basil J. Lewris, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for defendants/cross-appellants. With him on the brief were Kenneth E. Payne and Bruce C. Zotter.

Before BALDWIN * and BENNETT, Senior Circuit Judges, and ARCHER, Circuit Judge.

BALDWIN, Senior Circuit Judge.

Richard R. Vieau and Robert A. Vieau (Vieau) sued Japax, Inc., Japax Scientific Corporation, and Textron, Inc. (Japax) in the United States District Court for the Eastern District of Michigan, Southern Division, for infringement of United States Patent No. 4,243,864 (Vieau patent). Following a jury verdict on the issues of validity and infringement in favor of Vieau, the court granted a motion by Japax for judgment notwithstanding the verdict (JNOV), finding the patent invalid for failure to

---

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

disclose best mode, or, if not invalid, not infringed. On appeals by both parties, we affirm-in-part and vacate-in-part.

### Background

The Vieau patent bears the title "Multiple Wire Electrode Feed Mechanism for Electroerosion Machine." It relates to the process of electrical discharge machining (EDM), the cutting of metal by use of an electric spark. Typically, an electrode is placed about two-thousandths or three-thousandths of an inch from a workpiece, and a dielectric liquid, such as oil or water, is circulated between them. An electric charge is applied to both the electrode and the workpiece so that a spark jumps between them. When the spark leaves the electrode and strikes the workpiece, a bit of metal sputters off the workpiece and is carried away by the liquid. A little of the electrode is also burned away at the same time. One way to keep a fresh electrode surface near the workpiece is to use a wire that moves past the workpiece as the latter is being cut. The burned place on the wire is carried away and the wire next to the workpiece is always fresh. The workpiece itself is mounted on a table that moves to control the shape of the cut.

The Vieau patent claims a machine that allows multiple identical cuts to be made in a workpiece or multiple workpieces to be cut identically. The Vieau patent discloses use of several supply spools of wire. The wires are routed through a tension assembly, a cutting guide assembly, a take-up assembly, and ultimately wound onto a single take-up spool.

The claims in issue at trial were claims 1, 3, and 5, quoted below:

1. In an electroerosion machine which cuts a metal by means of electrical discharge between an electrically conductive wire and metal, said machine having a frame, a table for carrying metal movably mounted on the frame, a head mounted on the frame, and an electrical system connected to the electrically conductive wire and the metal, the improvement comprising; a plurality of supply spools of electrically conductive wire, each of said supply spools having a wire continuously removed therefrom, a tension assembly receiving a wire from each of the supply spools, a cutting guide assembly receiving each of said wires and holding the wires parallel to each other adjacent to the metal while there is electrical discharge between each of the wires and the metal, and a take-up assembly receiving the wires from the cutting guide assembly.

3. In an electroerosion machine of the character described as defined in claim 1 wherein, the cutting guide assembly includes; a plurality of input guides spaced from each other and being equal in number to the number of wires, each of said input guides receiving one of said wires, a discharge guide support pivotally mounted on the head, and a plurality of discharge guides equal in number to the number of wires mounted on the discharge guide support, said discharge guide support being pivotally positionable to align each discharge support with its respective input guide to receive a respective wire from the input guide and hold the wire parallel to the other wires between their respective input and discharge guides.

5. In an electroerosion machine of the character described as defined in claim 1 wherein, the cutting guide assembly includes; a plurality of input guides spaced from each other and being equal in number to the number of wires, each of said input guides receiving one of said wires, and a plurality of discharge guides equal in number to the number of wires, each of said discharge guides being positioned relative to a respective input guide to receive the wire from the input guide and hold the wire parallel to the other wires between their respective input and discharge guides.

The two accused machines (the LM–30–5 and the LM–40–3) are multiwire electroerosion devices developed and manufactured in Japan and imported into the United States. The LM–30–5 and the LM–40–3 have capacity for five and three wires, respectively. Japax concedes that, for the purposes of this infringement analysis, the

accused devices are identical to each other since they differ only in the number of wires utilized.

### Procedural History

In response to Vieau's complaint for patent infringement each of the three named defendants filed an answer containing several affirmative defenses, and in addition filed a declaratory judgment counterclaim asserting invalidity and noninfringement. The trial was bifurcated. After the evidence was presented, the judge submitted 53, consecutively-numbered "Special Questions" to the jury together with 14 additional "Verdict" questions. The 53 special questions were interrogatories primarily on issues of fact, most of which were necessary to support the answers to the general verdict questions. Through its answers to the latter, the jury rendered verdicts on the issues of anticipation, obviousness, best mode, enforceability, and infringement of each of the three litigated claims with respect to the two allegedly infringing machines.[1] The jury concluded in its answers to the verdict questions that Japax did not establish invalidity by clear and convincing evidence and did not prove the Vieau patent unenforceable, and that Vieau had shown infringement of claims 1 and 5 by a preponderance of the evidence.

Following the district court's entry of partial judgment in favor of Vieau, Japax moved for a JNOV or in the alternative for a new trial on the issues of anticipation, obviousness, best mode, unenforceability, and infringement. Before ruling on the JNOV motion, the second phase of the trial took place after which the district court directed a verdict for Japax on the issues of damages and willful infringement. Following the directed verdict, the court granted the pending JNOV motion by Japax with respect to the issues of infringement and validity, finding the patent invalid for failure to disclose best mode, or, if not invalid, not infringed.

### Issues on Appeal

Vieau appeals the judgments in both phases of the trial. Vieau contends on appeal that the grant of JNOV with respect to best mode and infringement by both Japax devices was error. Vieau contends that the district court also erred in not allowing it to present testimony on the issue of its damages and in directing a verdict for Japax finding no damages and no willful infringement. Finally, Vieau contends that the district court erred in its decision to grant JNOV on infringement in the first phase of the trial by relying on a letter that was not introduced until the second phase of the trial. Japax cross-appeals, arguing that the district court's failure to grant JNOV on the obviousness issue [2] was error and that Vieau's appeal is so frivolous as to entitle it to double costs and attorney fees.

Our disposition of this appeal requires the resolution of the following questions:

1. Did the district court err by entering JNOV on the issue of infringement?

2. Did the district court err by referring to a letter not in evidence during the infringement trial when explaining its decision to grant a JNOV on the issue of infringement? We answer each question in the negative. Because we affirm on noninfringement, we need not address any issues relating to validity, damages, and will-

---

1. The first 8 "Verdict" questions asked whether the defendants had proved by clear and convincing evidence:

   (a) that claims 1, 3, and 5 of the patent had been proved invalid for anticipation (3 questions);

   (b) that claims 1, 3, and 5 of the patent had been proved invalid for obviousness (3 questions);

   (c) that the patent was invalid for failure to disclose best mode (1 question); or

   (d) that the patent was unenforceable for inequitable conduct (1 question).

The remaining 6 "Verdict" questions asked whether the plaintiffs had proved by a preponderance of the evidence:

   (e) that claim 1, 3, or 5 had been infringed by the LM–30–5 machine (3 questions); or

   (f) that claim 1, 3, or 5 had been infringed by the LM–40–3 machine (3 questions).

2. The court had denied Japax's JNOV motion on the issues of anticipation, obviousness, and unenforceability. Japax did not appeal the denial of JNOV on anticipation and unenforceability.

ful infringement. We deny Japax's request for double costs and attorney fees.

## Discussion

### I.

As a preliminary matter, we briefly address the form of the district court's submission of interrogatories and verdict questions to the jury in this case. As noted in *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1515, 220 USPQ 929, 938 (Fed.Cir.1984), "[d]istrict courts have broad authority and discretion in controlling the conduct of a trial. That authority extends to the form by which juries return verdicts, Fed.R.Civ.P. 49, and will not be interfered with unless an abuse of discretion is shown." *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361, 220 USPQ 763, 771 (Fed.Cir. 1984) (special interrogatories in patent cases facilitate appellate review and avoid unnecessary remand for retrial).

The submitted special questions and verdict questions employed in this case were designed to comply with Fed.R.Civ.P. 49(b) in accordance with this court's suggestions in *Railroad Dynamics*, 727 F.2d at 1517, 220 USPQ at 939 and *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197 (Fed.Cir.1983). The trial court and both parties treated the questions as doing exactly that. The district court's decision to fashion multiple general verdict questions to conform to the multiple claims and devices at issue in the present case was not an abuse of discretion. *See Railroad Dynamics*, 727 F.2d at 1516, 220 USPQ at 939 (approving challenged interrogatories which, although not literally complying with the language of either section (a) or (b) of Rule 49, allowed the jury to speak specifically with respect to each defense to the benefit of the court and the parties); *see also Connell*, 722 F.2d at 1547, 220 USPQ at 197 (submission of a question of law to a jury, together with appropriate instructions on the law from the trial judge, is not error).

Nevertheless, the benefit of the interrogatories was not fully realized in this case because, as the district court found, the jury's answers to the special questions relating to infringement were inconsistent with the corresponding general verdict. The jury's answers to special questions 7–9 found that the claims of the Vieau patent called for "plurality of separate, individually operable" tension devices, cutting guide assemblies, and take-up assemblies.[3] The jury found in questions 44–46 (covering the LM–30–5) and questions 49–51 (covering the LM–40–3) that the Japax machines each had a single tension assembly, cutting guide assembly, and take-up assembly as opposed to assemblies individually operable for each wire.[4] The jury's findings that the claims covered a plurality of separately operable devices while the Japax devices operated as a single assembly with one set of controls were consistent with a finding of noninfringement. However, despite these findings, the jury also found that both Japax devices infringed claims 1 and 5 of the Vieau patent.

---

3. The jury answered "yes" to each of the following interrogatories:

> 7. Did the plaintiffs, at the time they filed their patent application, define the term "tension assembly" to mean a plurality of separate, individually operable tension devices, each providing tension for a separate wire?
> 8. Did the plaintiffs, at the time they filed their patent application, define the term "cutting guide assembly" to mean a plurality of separate, individually operable cutting guide assemblies each guiding a separate wire?
> 9. Did the plaintiffs, at the time they filed their patent application, define the term "take-up assembly" to mean a plurality of separate, individually operable take-up devices each for taking up a separate wire?

4. The jury answered "one" to each of the following interrogatories:

> 44. Does the Japax LM–30–5 machine have a tension assembly receiving each of the wires or five individually operable tension assemblies each receiving one wire?
> 45. Does the Japax LM–30–5 machine have a cutting guide assembly receiving each of the wires or five individually operable cutting guide assemblies each receiving one wire?
> 46. Does the Japax LM–30–5 have a take-up assembly or five individually operable take-up assemblies?

The jury also answered "one" to similar questions (interrogatories 49–51) asked in regard to the Japax LM–40–3 machine.

"When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict...." Fed.R.Civ.P. 49(b). Although noting that the jury's answers to questions 7–9 and to questions 44–46 and 49–51 were inconsistent with its finding of infringement, the judge did not enter JNOV on the issue of infringement on the basis of that inconsistency. Rather, the judge ruled (1) that the jury's findings that the Vieau patent claimed a plurality of separate, individually operable devices were not supported by substantial evidence, and (2) that the jury's findings that the Japax devices had only single assemblies were also not supported by substantial evidence. Since these rulings still meant that the claims and the accused devices did not either both contain a plurality of separate devices or both contain single assemblies, the district court concluded that reasonable persons could not have reached a verdict in favor of Vieau on infringement and granted JNOV.

Our initial task in the present case is to determine if the jury's answers to the special questions can stand, applying proper JNOV standards. Only after that review has been completed do we determine whether there remains an inconsistency between the special questions and the general verdict which would require application of Rule 49(b).

In *Connell*, this court discussed guidelines pertinent to consideration of motions for directed verdict and for judgment notwithstanding the verdict:

[A] court must: (1) consider all the evidence; (2) in a light most favorable to the non-mover; (3) drawing reasonable inferences favorable to the non-mover; (4) without determining credibility of witnesses, and (5) without substituting its choice for that of the jury between conflicting elements in the evidence. The court should not be guided by its view of which side has the better case or by what it would have done had it been serving on the jury. If, after following those guidelines, the court is convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or JNOV.

722 F.2d at 1546, 220 USPQ at 197. However, *Connell* also noted that "[d]eference due a jury's fact findings in a civil case is not so great, however, as to require acceptance of findings where * * * those findings are clearly and unquestionably not supported by the substantial evidence." *Id.*

■ Thus, the burden on one who appeals the grant of a motion for JNOV, as occurred here, is to show that the jury's factual findings were supported by at least substantial evidence and the legal conclusions made by the jury can be supported by those findings. *See Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Id.*

## II.

■ In determining patent infringement, two inquiries are involved. The first inquiry, interpreting the meaning of the claims, is a question of law. The second inquiry, whether the properly interpreted claims encompass the accused device, is a question of fact. *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 671, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984).

Japax argues on appeal that the accused devices do not infringe because they are, essentially, several single-wire machines strung together. That is, for a separate strand of wire, each Japax device has a separate, individually operable tension controller, cutting guide assembly, and take-up assembly. On the other hand, Japax argues, the Vieau patent claims cover only a device with single assemblies and a single set of controls, regardless of the number of wires. Thus, for the purposes of this ap-

peal, Japax argues that the jury's claim interpretation reflected in its answers to questions 7–9 (that the claims cover a device with separately operable wires) was not supported by substantial evidence, and that there is not substantial evidence to support the jury's responses to questions 44–46 and 49–51 (that the accused devices contain only single assemblies), so that the JNOV with respect to those questions was proper.

Vieau, in its principal brief, argues that the jury's findings that the Japax devices each contained a single tension assembly, a single cutting guide assembly, and a single take-up assembly were supported by substantial evidence. Thus, Vieau argues that the jury's responses to questions 44–46 and 49–51 (that the accused devices have single assemblies) are supported by substantial evidence, but does not contest the JNOV with respect to questions 7–9. Then, in its reply brief, Vieau argues that the jury's responses to questions 7–9 (that the claims cover a device with separately operable wires) are supported by substantial evidence and that the claims interpreted to cover a "plurality of individual devices" lead to a finding of infringement by the Japax devices. It seems, therefore, that Vieau adopts one claim definition in its principal brief and a different one in its reply brief.

■ The key issue here is the meaning of "assembly" in the claims—does it mean a device in which all wires are operated by one set of controls or a device with a plurality of individually operable wires? When the language of a claim is disputed, it is proper to turn to other evidence introduced at trial. *See Moeller v. Ionetics*, 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir. 1986).

■ The specification discloses an EDM machine which has been improved by adding a multiple wire feed. The wires are routed through a tension assembly, a cutting guide assembly, and a take-up assembly. These wires are pulled through the various assemblies by an electric motor that runs a single take-up spool. The hardware guiding each wire is disclosed to be identical so that substantially the same tension is maintained on each wire. Tension for the wires is adjustable by a single control knob in much the same manner as tension on a sewing machine. One of the inventors testified that the only way to "turn off" one wire on the machine disclosed by the Vieau patent is to remove the wire. That evidence supports interpreting "assembly" as used in the claims to cover only a device with unitary controls.

The jury, however, found the term "assembly" to mean a plurality of separate, individually operable devices, each working on a separate wire. To support that, Vieau relies on *The Compact Edition of the Oxford English Dictionary* definition ("a collection of things") and contends that the record, in conjunction with the dictionary definition, supports the jury's conclusion. We cannot agree. The trial court properly noted that there is nothing in the claims or specification that would indicate the wires are individually controlled since at least the cutting guide and take-up assemblies receive and control the wires as a group. We determine, as we must in a JNOV context, that no reasonable juror could have concluded that "assembly" covers separate devices. We agree with the district court in that regard, and must reject the jury's responses to questions 7–9.

We also reject the jury's responses to questions 44–46 and 49–51, *i.e.*, that the accused devices contain unitary controls. To support the jury responses, Vieau contends that the jury finding that the Japax LM–40–3 and LM–30–5 have one tension cutting guide and take-up assembly is supported by substantial evidence because one of the appellants had so testified. However, as Japax points out, that "support" is tenuous at best. It is contradicted by other testimony by the same witness and otherwise does not rise to the level of substantial evidence necessary to enable Vieau to meet its burden on appeal. *See Connell*, 722 F.2d at 1546, 220 USPQ at 197. The Japax devices clearly contain an individually operable tension device, an individually operable cutting guide assembly, and an individually operable take-up assembly for

each separate wire. Therefore, we conclude that there is not substantial evidence to support the jury answers to questions 44–46 and 49–51. Since the jury verdict of infringement is inconsistent with (1) the Vieau claims covering only unitary devices, and (2) the Japax machines having multiple separate assemblies, we hold that the grant of Japax's motion for JNOV on the issue of infringement was proper. Fed.R.Civ.P. 49(b).

### Remaining Issues

■ Vieau calls this court's attention to the letter quoted in part by the district court as support for the grant of JNOV on the infringement issue. As the district court itself pointed out when discussing the letter, the letter was not introduced until the second phase of the trial covering damages and willful infringement. Vieau contends that the use of the letter, which contains an interpretation of the word "assembly" as used in the Vieau patent specification, was error. However, Vieau makes no effort to show that the district court's use of the letter materially influenced the court's decision. Apart from the letter in question, the record more than adequately supports the district court's conclusions, including its findings on the interpretation of the word "assembly" and its findings on the conflict between the special questions and the verdict. Vieau has not met its burden on appeal to show that any error resulting from the district court's use of the letter was harmful. *See, e.g., Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1021–22, 226 USPQ 881, 884 (Fed.Cir.1985).

■ Finally, Japax requests an award of double costs and attorney fees on the grounds that Vieau's appeal is frivolous. There is a difference between advancing a losing argument and prosecuting a frivolous appeal. In this case, the jury made some conflicting findings. The judge entered a verdict contrary to some of those findings. On these facts we cannot say that Vieau's appeal from the district court's decision was frivolous and the request for double costs and attorney fees is denied. *Orthopedic Equipment Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1384, 217 USPQ 1281, 1287 (Fed.Cir.1983) ("award of attorney fees is within discretion of trial judge"); *see also Reactive Metals Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582–83, 227 USPQ 821, 824 (Fed.Cir. 1985).

### Conclusion

■ Our disposition on the issue of infringement renders moot the appeal of the propriety of a directed verdict on the issues of damages and willful infringement. There is no indication that Japax's cross-appeal on invalidity extends beyond the litigated claims or the accused devices found to be noninfringing. Accordingly, we also dismiss the cross-appeal as moot. The judgment entered by the district court with respect to each of the mooted issues is therefore *vacated.* It is *affirmed* with respect to infringement.

AFFIRMED–IN–PART and VACATED–IN–PART

BENNETT, Senior Circuit Judge, with whom ARCHER, Circuit Judge, joins, concurring:

I concur with the views contained in Senior Judge Baldwin's majority opinion. I write separately in order to express more fully my reasons for concurring in the decision to vacate the district court's judgment on the validity issue and to dismiss Japax's cross-appeal[1] as moot under the circumstances of this case.

Whether or under what circumstances an appellate court should or must decide a

---

**1.** Where judgments on validity and infringement are distinct, the prevailing party on liability seeking to challenge either validity or infringement on appeal must file a cross-appeal. *Shelcore, Inc. v. Durham Industries, Inc.,* 745 F.2d 621, 623 n. 1, 223 USPQ 584, 585 n. 1 (Fed.Cir.1984); *see Radio Steel & Mfg. Co. v.*

*MTD Products, Inc.,* 731 F.2d 840, 844, 221 USPQ 657, 660 (Fed.Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). By filing a cross-appeal following the denial of JNOV on the obviousness issue, Japax has properly met that requirement in this case.

cross-appeal on validity following disposition of a companion appeal on the grounds of noninfringement has not been squarely addressed by this court. In *Altvater v. Freeman*, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450, 57 USPQ 285 (1943), the Supreme Court stated the following:

> To hold a patent valid if it is not infringed is to decide a hypothetical case. But the situation in the present case is quite different. We have here not only bill and answer but a counterclaim. Though the decision of non-infringement disposes of the bill and answer, it does not dispose of the counterclaim which raises the question of validity.... [T]he issue of validity may be raised by a counterclaim in an infringement suit.... [W]e are of the view that the issues raised by the present counterclaim were justiciable and that the controversy between the parties did not come to an end on the dismissal of the bill for non-infringement, *since their dispute went beyond the single claim and the particular accused devices involved in that suit.*

*Id.* at 363–64, 63 S.Ct. at 1117–18, 57 USPQ at 288 (all citations and footnotes omitted) (emphasis added). Under the facts of *Altvater*, it was clear to the Supreme Court that—

> [a] controversy was raging, even apart from the continued license agreement. That controversy was "definite and concrete, touching the legal relations of parties having adverse legal interests." That controversy concerned the validity of the reissue patents. Those patents had many claims in addition to the single one involved in the issue of infringement. And petitioners were manufacturing and selling additional articles claimed to fall under the patents. Royalties were being demanded and royalties were being paid. But they were being paid under protest and under the compulsion of an injunction decree. It was to lift the heavy hand of that tribute from the business that the counterclaim was filed.

*Id.* at 364–65, 63 S.Ct. at 1118, 57 USPQ at 288–89 (citations and footnote omitted).

The decision in *Altvater* followed *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263, 41 USPQ 556 (1939), in which the Supreme Court reversed the dismissal of an appeal by a defendant from a decree declaring the patent-in-suit valid, despite a finding of noninfringement in the same decree. The Supreme Court ruled that the Circuit Court of Appeals had jurisdiction to entertain the appeal, but only for the purpose of reformation of the decree. This result was subsequently explained by the Supreme Court in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 337, 100 S.Ct. 1166, 1173, 63 L.Ed.2d 427 (1980):

> In *Electrical Fittings*, the petitioners asserted a concern that their success in some unspecified future litigation would be impaired by *stare decisis* or collateral estoppel application of the District Court's ruling on patent validity. This concern supplied the personal stake in the appeal required by Art. III. It was satisfied fully when the petitioners secured an appellate decision eliminating the erroneous ruling from the decree. After the decree in *Electrical Fittings* was reformed, the then unreviewable judgment put an end to the litigation, mooting all substantive claims.

One patent commentator has explained the results in *Electrical Fittings* and *Altvater* in the following way:

> *Altvater* seemed to do two things. First, it provided a rational [sic] for the ruling in *Electrical Fittings*—decision on validity of a patent not found infringed is one on a "hypothetical case." Second, it affirmed that an accused infringer could seek a declaratory judgment of invalidity, *providing there was a continuing dispute between the parties transcending the status of certain accused devices already found not to infringe.*

4 D. Chisum, Patents § 19.02[1], at 19–10 (1986) (emphasis added).

The requirement of satisfying the case or controversy requirements in declaratory judgment actions through identification of an actual and continuing dispute has been recognized by this court. For example, in

*Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 221 USPQ 473 (Fed.Cir.1984), a case involving a counterclaim for a declaratory judgment on validity, the court affirmed the district court's finding of noninfringement. Although conceding that the judgment of noninfringement could render academic any discussion of validity, the court vacated the district court's finding of invalidity in light of errors in the court's analysis and remanded the issue to district court for a determination of whether there remained a continuing case or controversy between the parties and if so, whether issuance of a declaratory judgment was appropriate under the facts of that case. *Id.* at 761 n. 7, 221 USPQ at 479 n. 7. *See also Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 222 USPQ 929 (Fed.Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985) (where court vacated a district court's finding of invalidity following a settlement agreement on liability because injunctive relief was no longer possible since the subject patent had expired).

In *Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1398, 222 USPQ 943, 949 (Fed.Cir.1984), this court observed:

Declaratory judgment jurisdiction pursuant to 28 U.S.C. § 2201, must be predicated on the existence of a case or controversy between the parties. *Altvater,* 319 U.S. at 363, 63 S.Ct. at 1117; *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In addition, the case or controversy requirement for declaratory judgment jurisdiction has been defined to be the same as the case or controversy requirement in the constitutional sense. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

**2.** The court in *Webb* declined to address the question of whether the establishment of declaratory judgment jurisdiction at the time of the filing of the action is sufficient to sustain the case or controversy requirement to the conclusion of the action. But it left little doubt as to its likely position on the question, noting that the Supreme Court had stated that " 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " 742 F.2d at 1398 n. 6, 222 USPQ at 949 n. 6 (quoting *Preiser v. Newkirk,* 422 U.S. 395,

Moreover, such a case or controversy must exist as of the date of the filing of the declaratory judgment action. *See International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217, 206 USPQ 772, 781 (7th Cir.1980). (All footnotes omitted.) [2]

In *Webb,* the patentee had asserted and litigated infringement of 6 of the 12 claims in its patent; however, the defendant had filed a counterclaim for a declaratory judgment asserting invalidity and noninfringement of all 12 claims of the patent. The district court found the inventions set forth in all 12 claims to have been obvious. On appeal, in addition to contesting the invalidity of the 6 claims that it put in issue, Webb asserted that the district court erred in holding invalid the six claims not litigated by Webb, but only raised in the counterclaim since there was no case or controversy between the parties regarding those claims. This court agreed, vacating the invalidity holding with respect to those claims. 742 F.2d at 1398–1400, 222 USPQ at 948–50. *See also Datascope Corp. v. SMEC, Inc.,* 776 F.2d 320, 327, 227 USPQ 838, 844 (Fed.Cir.1985).

In *Webb,* this court outlined some of the requirements for satisfying the jurisdiction requirements of a case or controversy for a declaratory judgment in a patent case.

The case or controversy requirement for a patent invalidity declaratory judgment action requires the presence of two elements. First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. Next, the plaintiff seeking a

401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)); *see also Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974). Subsequently, in *International Medical Prosthetics Research Associates, Inc. v. Gore Enterprise Holdings, Inc.,* 787 F.2d 572, 575, 229 USPQ 278, 281 (Fed.Cir.1986), this court expressly confirmed its adoption and adherence to the need for a continuing controversy in order to sustain the court's jurisdiction over a declaratory judgment action.

declaration of invalidity must have actually produced the accused device or have actually prepared to produce such a device. *Moreover, the existence of a case or controversy must be evaluated on a claim-by-claim basis.* Further, where ... the declaratory defendant (patentee) has denied the factual allegations that allegedly support the existence of case or controversy, the declaratory plaintiff must prove the existence of facts underlying such allegations. (All citations omitted).

742 F.2d at 1398–99, 222 USPQ at 949 (emphasis added).

The basis for the court's decision to vacate in *Webb* was the inability of the declaratory plaintiff to meet the second requirement noted above—showing that it had produced or intended to produce a device that met the limitations of the claims from which injunctive relief was sought. The court restricted the scope of its holding to the situation where the declaratory plaintiff, in response to an initial complaint by the declaratory defendant that asserted the infringement of less than all of his claims, had counterclaimed for an invalidity declaration but failed to meet the case or controversy requirement regarding the invalidity of all the claims.[3]

Thus, the precedent from the Supreme Court and this court makes clear that when a cross-appeal on a counterclaim seeking a declaratory judgment on validity remains following a determination of noninfringement by the appellate court, an inquiry into whether there is a continuing case or controversy should be made in order to determine if the validity issue raised by the cross-appeal should be considered by the appellate court. The appellate court need go on to rule on the merits of the cross-appeal only if there is a continuing dispute (such as the presence or threat of further litigation) regarding other claims or other accused devices that remains unresolved by the finding of noninfringement.

It is the burden of the party seeking the declaratory judgment to illustrate, either in its briefs or at oral argument, the continued existence of a case or controversy should a decision of noninfringement be made by this court in deciding the appeal. *See International Medical Prosthetics*, 787 F.2d at 575, 229 USPQ at 281 (burden is on declaratory plaintiff to establish that jurisdiction existed at, and has continued since, the time the complaint was filed). This requirement avoids having this court unnecessarily address what might turn out to be a hypothetical situation. *Cf. Envirotech Corp.*, 730 F.2d 753, 221 USPQ 473. The factual situation in the present case falls into the second category noted in the footnote from the *Webb* case—a declaratory counterclaim asserting the invalidity of all of the claims in response to a complaint that asserted the infringement of all of the claims.[4] Yet here, the accused devices are the only devices manufactured by the defendants which have been alleged to infringe the claims of the Vieau patent. Furthermore, Japax's brief states that its cross-appeal on obviousness was filed in response to Vieau's continued allegations of infringement on appeal in this case. Therefore affirmation of the finding of no

---

**3.** As the court explained:

This holding does not preclude the issuance of a declaratory judgment that all claims are valid or invalid in response to, *inter alia*, (1) the filing of a declaratory judgment complaint asserting the invalidity of all of a patentee's claims in response to general accusations of infringement by the patentee ... ; (2) the filing of a declaratory judgment counterclaim asserting the invalidity of all of patentee's claims in response to a complaint that asserted the infringement of all of the claims; or (3) the filing of a declaratory judgment counterclaim asserting the invalidity of all of a patentee's claims in response to an accusation or a complaint that asserted the infringement of less than all of the claims where the declaratory plaintiff is able to meet both of the case or controversy requirements for all of the claims. Nor does the present holding preclude a declaratory judgment that all claims are invalid when the proof at trial establishes a basis, *e.g.*, fraud, derivation, for such judgment.
*Id.* at 1399 n. 8, 222 USPQ at 950 n. 8 (all citations omitted).

**4.** Although all the claims were alleged to be infringed by the patentee and all were sought to be declared invalid by the defendant, only claims 1, 3, and 5 were litigated at trial or disputed on appeal.

infringement of claim 1 and the lack of a showing of any other potentially infringing devices means, as in *Webb*, the defendant can no longer meet the second requirement for a continuing case or controversy for a declaratory judgment.

Since there is no indication in the present case that the controversy between the parties extends beyond the accused devices found to be noninfringing, this court properly exercises its discretion to dismiss the cross-appeal in this case as moot. *See A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1400, 230 USPQ 849, 855–56 (Fed.Cir. 1986) (mooting cross-appeal on validity and infringement after affirming district court's finding of unenforceability); *see also Harries v. Air King Products Co.*, 183 F.2d 158, 162–63, 86 USPQ 57, 61 (2d Cir.1950) (concluding that appellate court had discretion to rely solely on noninfringement where claims are not evidently invalid). Furthermore, the validity issue in this case is not one in which invalidity is plainly evident. *See Leesona Corp. v. United States*, 530 F.2d 896, 906 n. 9, 208 Ct.Cl. 871 (1976); *cf. Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 230 USPQ 45 (Fed.Cir.1986) (where in a case involving a declaratory judgment counterclaim and cross-appeals by both parties, the court summarily affirmed the district court's holding that the patent had not been shown to be invalid after first affirming the district court's holding of noninfringement).[5]

---

**5.** Admittedly, in light of the collateral estoppel effects given a finding of invalidity under *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), there could be greater potential ramifications to vacating a finding of invalidity than a finding of validity; nevertheless, since a determination of noninfringement also creates finality and res judicata effects with respect to the defendant and the accused devices involved in the suit, if there are no other claims or devices at issue, there is no remaining case or controversy between these parties.