967 F.2d 1571
 23 U.S.P.Q.2d 1362
 MORTON INTERNATIONAL, INC., Plaintiff-Appellant,
v.
CARDINAL CHEMICAL COMPANY, a partnership, W.M. Quattlebaum,
Jr., Dorothy Quattlebaum, and W.M. Quattlebaum, III,
individuals, Cardinal Manufacturing Co., and Cardinal
Stabilizers, Inc., Defendants/Cross-Appellants.
 Nos. 91-1174, 91-1175.
 United States Court of Appeals,
Federal Circuit.
 June 24, 1992.
 
 Appealed from United States District Court for the District of South Carolina; William M. Catoe, Jr., United States Magistrate Judge.
 Gordon R. Coons, John E. Rosenquist and Jeffrey S. Ward, Leydig, Voit & Mayer, and Gerald K. White, Morton Intern., Inc., Chicago, Ill., on petition for rehearing with suggestion for rehearing in banc for the plaintiff-appellant.
 Charles F. Schill and Elizabeth R.P. Bowen, Adduci, Mastriani, Meeks & Schill, Washington, D.C., and William O. Sweeny, III and Arthur L. Coleman, Nelson, Mullins, Riley & Scarborough, Columbia, on petition for rehearing with suggestion for rehearing in banc for defendants/cross-appellants.
 I. Fred Koenigsberg, President, American Intellectual Property Law Ass'n, Arlington, Va., and Joseph R. Re and William C. Rooklidge, Knobbe, Martens, Olson & Bear, of Newport Beach, Cal., and H. Ross Workman, Workman, Nydegger & Jensen, Salt Lake City, Utah and Nancy J. Linck, Cushman, Carby & Cushman, Washington, D.C., on brief for amicus curiae, American Intellectual Property Law Ass'n in support of suggestions for rehearing in banc.
 For majority opinion, see 959 F.2d 948.
 NIES, Chief Judge, dissenting from the orders declining suggestions for rehearing in banc:
 Cardinal Chemical Company sought and obtained a declaratory judgment that U.S. Patents 4,062,881 and 4,120,845, owned by Morton International, Inc., were invalid. On appeal, a majority of the panel reasoned that because it affirmed the district court's finding on Morton's infringement claim that Cardinal did not infringe the subject patents, it "need not address the question of validity." Citing Vieau v. Japax, Inc., 823 F.2d 1510, 3 USPQ2d 1094 (Fed.Cir.1987) as authority, the majority, sua sponte, vacated the judgment of invalidity entered on Cardinal's declaratory counterclaim. Vieau holds that the issue of validity of a patent, presented in a counterclaim for a declaratory judgment, becomes "moot," in the sense of no longer presenting a case or controversy, upon this court's finding that: (1) the patent in issue is not infringed and (2) the dispute raised by the counterclaim does not extend beyond the patentee's infringement claim.[1]
 The Vieau analysis stems from two Supreme Court cases, Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939), and Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943), which addressed certain specific problems respecting validity and infringement rulings by district and circuit courts. Until revisited by the request for in banc in this case, I agreed with the interpretation of Altvater in our precedent, although I found the Altvater decision at best confusing. Upon closer scrutiny, I conclude that part of the Altvater analysis has been misinterpreted for reasons which will become evident, and that Altvater may mandate the opposite result in this case. At the very least, I am convinced that because Altvater does not support the holding of Vieau, we should overrule Vieau and address the problem anew.
 * MISINTERPRETATION OF SUPREME COURT PRECEDENT
 A review of the Supreme Court precedent must begin with Electrical Fittings v. Thomas & Betts, supra. In Electrical Fittings, the district court, on a bill and answer, held the patent in suit "valid"[2] but not infringed. The patentee did not appeal. However, the victorious defendant sought to appeal the judgment to the extent it ruled the patent "valid." The circuit court dismissed the appeal on the theory that a winning party could not take an appeal. The Supreme Court reversed, holding that the winner/defendant could appeal to obtain, not a ruling on the merits, but reformation of the decree. The Court appeared concerned that the defendant might otherwise be precluded by the judgment from attacking the patent in another suit.
 The next decision, Altvater v. Freeman, supra, raised the question of whether a counterclaim for invalidity should be treated the same by an appellate court as a defense of invalidity had been treated in Electrical Fittings. The Court answered with a resounding "No." Per Altvater, a judgment entered by the district court on a declaratory claim for invalidity must be reviewed on the merits by the appellate court so long as a case or controversy exists at that time to support the assertion of the declaratory claim. In Altvater the Court found such controversy existed, despite the accused infringer's exculpation from liability on the patentee's claim, because the dispute between the parties "went beyond the single claim and the particular accused devices involved in [the patentee's] suit." Id., 319 U.S. at 364, 63 S.Ct. at 1118, 87 L.Ed. at 1454.
 Vieau and other decisions of our court have understood Altvater to mean that all declaratory claims for invalidity must be evaluated for the presence of a case or controversy under a standard of whether the counterclaim extended beyond the dispute defined by the patentee's claim of infringement. Thus, we have concluded that, if a declaratory claim simply involves the same devices and patent claims involved in the patentee's complaint, upon a finding of no infringement, a counterclaim seeking a declaration of invalidity becomes "moot", in the Constitutional sense of no case or controversy. See supra, at n. 1.
 This understanding of the import of Altvater is, in my view, wrong. A significant fact which distinguishes Altvater, and which makes its case or controversy analysis no longer germane, is that the Altvater claimant for a declaration of invalidity was a licensee. By reason of licensee estoppel, the licensee could not attack the validity of the patent except under limited circumstances. See, e.g., Katzinger Co. v. Chicago Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374 (1947) (licensee estoppel not applied in light of price-fixing provision of license). Altvater is interlaced with principles of licensee estoppel. Twenty-five years had to pass before Lear v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), overruled the doctrine of license estoppel. Thus, the discussion of case or controversy must be read in the context of that age--a time when a licensee had to base its declaratory judgment claim on a controversy beyond the patentee's assertion of a right to royalties under the license.
 To interpret Altvater broadly as requiring an accused infringer who is not a licensee to prove that its counterclaim for invalidity goes beyond the scope of the patentee's complaint in order to establish a case or controversy has never been warranted. Such extension of Altvater leads to the absurd result that an accused infringer can obtain a declaratory judgment for claims of the patent that were not asserted in the patentee's suit but not for those that were, whereas the patentee's suit in itself shows that the controversy rages as to the asserted patent claims.[3] In any event, with respect to even a licensee's need to show a dispute outside the scope of that asserted by the patentee, Altvater must be assigned to the graveyard with respect to its case or controversy analysis by reason of Lear v. Adkins and possibly Blonder-Tongue Labs, Inc. v. University of Ill. Found., 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).[4]
 All of the precedent of this court stems from Altvater in holding that a counterclaim for a declaration of invalidity is mooted, in the sense of no longer presenting a case or controversy, upon a finding of noninfringement on the patentee's specific charge of infringement, unless the declaratory claimant asserts matters beyond the patentee's complaint. Inasmuch as Altvater no longer has any viability respecting the need for a counterclaimant's separate and distinct case or controversy, the precedent of this court has been based on a false premise. The remaining and only controlling principle of Altvater is that an appellate court must decide a counterclaim for a declaration of invalidity where a case or controversy is present and the district court has entered judgment on the counterclaim. I believe that this court should address for itself this "case or controversy" requirement in the context of declaratory counterclaims, unrestricted by the outdated pronouncements of Altvater.
 II
 "MOOTNESS"
 A.
 Confusion of Principles
 Altvater aside, any suit including a counterclaim for a declaration of patent invalidity requires the presence of a case or controversy at all stages of litigation. If a claim becomes "moot" in this sense at the appellate level, it must be dismissed for lack of jurisdiction. Vieau relied on this principle but, in my view, confused concepts of mootness. The Vieau opinion concluded there was no case or controversy respecting validity and then said that the court exercised its "discretion" to dismiss the appeal of that issue. 823 F.2d at 1520-21, 3 USPQ2d at 1102-03. The majority opinion in this case also indicates, by its statement that "we need not address the question of validity," Morton Int'l, Inc. v. Cardinal Chem. Co., 959 F.2d 948, 22 USPQ2d 1231, 1235 (Fed.Cir.1992), that it made a discretionary decision to dismiss Morton's appeal of the judgment of invalidity. Indeed, the precedent of this court now takes a "one-size-fits-all" approach to treatment of the issue of validity. The court may always dismiss and vacate the judgment below as a matter of discretion once it concludes that the patent claims in issue are not infringed. This result is imposed on the parties regardless of whether the judgment below held the patent valid or invalid, regardless of whether a patentee attempted to have the declaratory counterclaim dismissed, regardless of a dispute over validity between the parties, and regardless of which party appeals the judgment and what that party seeks on appeal. I believe each of these situations requires a separate analysis.[5]
 B.
 The Meanings of "Mootness"
 As an initial matter, it is necessary to clarify what is meant when a court declares an issue is "moot." Indeed, the failure to recognize that "moot" has various meanings is a major defect in our precedent. "Mootness" can rise to the level of a bar to the court's exercise of jurisdiction or descend to the level of prudential convenience and economic use of judicial resources.
 "Mootness" is jurisdictional when the dispute between the parties, or at least an issue in the case, no longer exists. That is, the issue no longer presents an actual case or controversy. If an issue is moot in this sense, a court has no discretion but must dismiss for lack of jurisdiction. Powell v. McCormack, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491, 502 n. 7 (1969) (court lacks jurisdiction to consider the merits of a moot case); Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620, (1923) (where mandamus action for issue of building permit is mooted by the permit's issue pending appeal, appellate court must remand with directions to dismiss); Smith Intern., Inc. v. Hughes Tool Co., 839 F.2d 663, 5 USPQ2d 1686 (Fed.Cir.1988) (settlement prior to appellate court decision moots case); Fundicao Tupy S.A. v. United States, 841 F.2d 1101 (Fed.Cir.1988) (appeal of denial of preliminary injunction mooted by district court's intervening judgment).
 An issue is also said to be "mooted" when a court, having decided one dispositive issue, chooses not to address another equally dispositive issue. In this sense, mootness means only that a decision on another issue would have no practical significance. This type of mootness results from prudential, not jurisdictional, considerations. See United States v. Leon, 468 U.S. 897, 924-25, 104 S.Ct. 3405, 3421-22, 82 L.Ed.2d 677, 699-700 (1984) (Fourth Amendment issue may be decided as a matter of discretion before addressing "good faith exception" for warrantless searches.); Fischer & Porter v. United States Int'l Trade Comm'n, 831 F.2d 1574, 4 USPQ2d 1700 (1987) (patent issues mooted by affirmance of no injury in proceeding under 19 U.S.C. § 1337). See also Airline Pilots Ass'n, Intern. v. UAL Corp., 897 F.2d 1394, 1397 (7th Cir.1990) (distinguishing between a court's resolution of an alternative, unnecessary issue and Article III mootness); 13A Wright, Miller and Cooper, Federal Procedure: Jurisdiction § 3533 (1984).
 In a patent suit, an accused infringer may raise as defenses noninfringement and various grounds for holding the patent claims invalid, as well as various grounds for holding that patent unenforceable. A decision on any one of the grounds in favor of the accused infringer defeats the patentee's claim for damages or injunctive relief. Although not jurisdictionally moot, other equally dispositive issues are deemed "moot" in the sense that a ruling is not necessary to decision. Thus, a decision of noninfringement by this court "moots," i.e., may make it unnecessary to decide, the various other defenses. Unette Corp. v. Unit Pack Co., Inc., 785 F.2d 1026, 1029, 228 USPQ 933, 935 (Fed.Cir.1986). In this sense, a decision of invalidity "moots" the defense of noninfringement. United Carbon Co. v. Binney Co., 317 U.S. 228, 237, 63 S.Ct. 165, 170, 87 L.Ed. 232, 238 (1942) ("We are of the opinion that the claims in litigation are bad for indefiniteness, and have no occasion to consider questions of novelty, invention, and infringement.") Which defense the court chooses to address is a matter of discretion, although the Supreme Court has indicated that the more important public policy issue in patent cases is validity. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, 1646 (1945).[6] On the other hand, an appellate court, like a district court, may choose to decide all issues. As Judge Lourie explains, this court is not a court of last resort. Like the district court, it may resolve the issue of validity even as a defense and even after finding no infringement. Indeed, the Supreme Court in Sinclair would not have directed lower courts to resolve the issue of validity after finding no infringement if the latter finding jurisdictionally mooted the issue of validity.[7]
 Thus, the distinction between jurisdictional mootness and prudential mootness is important respecting what action can or must be taken by the lower courts. Jurisdictional mootness mandates that the court make no resolution on the issue. There is no discretion either to decide or not to decide. Only prudential mootness involves the exercise of discretion. Compare United States v. Leon, supra, with Brownlow v. Schwartz, supra.
 III
 DECLARATORY CLAIMS
 A.
 Jurisdictional Mootness
 A finding of noninfringement does not moot a declaratory claim for invalidity jurisdictionally regardless of the scope of the patentee's infringement suit.
 If Cardinal's action for a declaration of invalidity had been the sole proceeding in the case, Morton could not have inserted as an affirmative defense that Cardinal did not infringe the patent claims. A declaratory action for a judgment of invalidity is based on a fear of suit under the patent. Such fear is not dependent on being held liable for infringement. "A declaratory plaintiff has sufficient interest [where] ... there is a reasonable threat that the patentee or licensor will bring an infringement suit against the alleged infringer. Smith, Foreclosure of Licensee Validity Challenge with Procedural Barriers: Federal Jurisdiction, 61 JPOS 690, 697 (1979)." C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 879, 219 USPQ 197, 202 (Fed. Cir.1983); cf. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 176, 86 S.Ct. 347, 350, 15 L.Ed.2d 247, 251 (1965). Once the patentee creates a legitimate fear in an adversary that the patent will be asserted against it, nothing short of the patentee's unconditional guarantee not to do so under any circumstances ordinarily will remove that apprehension and thereby jurisdictionally moot the claim for declaratory relief. In Bard, even the affidavit of the patentee that it had no intention of suing the declaratory claimant fell short of mooting the asserted declaratory claim. Bard, 716 F.2d at 881, 219 USPQ at 204. Here, Morton has made no similar representation to Cardinal. Indeed, its suit against Cardinal confirmed the presence of the necessary controversy on Cardinal's counterclaim respecting at least the asserted claims. Morton's appeal of the invalidity judgment confirms again the threat of the patent.[8] And Cardinal has not waived its declaratory claim against the asserted claims, as some vindicated defendants have on appeal. I can see no possible basis for holding Cardinal's declaratory claim jurisdictionally moot.
 B.
 Prudential Mootness
 In a few circumstances, a declaratory invalidity claim may be prudentially mooted by the appellate court judgment on another issue. However, a finding of noninfringement is not such a circumstance. As indicated, noninfringement is not a permissible affirmative defense by the patentee and, thus, cannot be an alternative ground for judgment on a declaratory claim for invalidity as it is for a judgment on the patentee's claim. Altvater, supra.
 An example of prudential mootness of the declaratory claim on appeal appears in A.B. Dick Co. v. Burroughs Corp., 798 F.2d 1392, 1400, 230 USPQ 849, 855-56 (Fed. Cir.1986). There, this court upheld the accused infringer's defense of inequitable conduct which rendered the patent entirely unenforceable. Thus, a judgment of invalidity would have added nothing to the relief already afforded the counterclaimant on the patentee's claim.
 C.
 Redundancy
 In my view the issues which should have been addressed in banc, after eliminating the concept of a declaratory judgment being jurisdictionally "mooted" as held in Vieau, concern the discretionary power of a court to refuse to accept an accused infringer's declaratory judgment suit or counterclaim which is merely redundant to a claim being litigated by its adversary. As stated by Justice Frankfurter in his dissent in Altvater,
 
 
 1
 We are all agreed that while a district court may have jurisdiction of a suit or claim under the Federal Declaratory Judgments Act, 28 U.S.C. § 400, it is under no compulsion to exercise such jurisdiction. If another proceeding is pending in which the claim in controversy may be satisfactorily adjudicated, a declaratory judgment is not a mandatory remedy.
 
 
 2
 319 U.S. at 366, 63 S.Ct. at 1119, 87 L.Ed. at 1455. Clearly a district court need not accept a redundant declaratory counterclaim (or even a separate suit), and may reserve making a decision on whether declaratory relief is appropriate until after decision on the plaintiff's claim. Borchard, Declaratory Judgments 814 (1941). The standard is whether the declaratory relief would be appropriate as cumulative or alternative relief. The provisions in Fed.R.Civ.P. 57 codify the view that:
 
 
 3
 the declaratory judgment should not be considered an extraordinary remedy or an unusual or a strange form of action; it should be considered a simple, ordinary auxiliary remedy-no more strange than injunction, specific performance, or damages-to be asked for and given whenever it will remove uncertainty in the rights of a litigant or settle a controversy existing or incipient.
 
 
 4
 Clark, Code Pleading, § 53 at 336 (1947). See also 10A Wright, Miller and Kane, Federal Practice and Procedure § 2758 (1983).
 
 
 5
 In this case the district court entered a judgment, on the patentee's claim, of no liability by reason of noninfringement. On the counterclaim the court entered judgment of invalidity. The judgments are not redundant and the factual inquiries to resolve each claim were distinctly different. Cf. Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 103, 74 S.Ct. 414, 422, 98 L.Ed. 532, 543 (1954). From the distinction drawn in the judgments, it appears that the district court concluded that the judgment on the counterclaim was a remedy necessary to settle the rights of the parties more completely. It could also be concluded that the public policy stated in Blonder-Tongue made a judgment on the validity counterclaim the more desirable judgment. The judgment of invalidity was in no sense merely "advisory".
 
 
 6
 Different views are espoused on whether the scope of appellate review of a district court's decision to accept or dismiss a declaratory claim is highly restricted (abuse of discretion) or plenary (de novo). See Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 779 (1982) (noting decisions both ways and advocating de novo review of district court decisions).
 
 
 7
 We would have a different case if Morton had sought dismissal of the declaratory judgment claim as merely redundant of the claim of its complaint either at the district court level or in this court. This issue, however, has not been raised. Provident Bank v. Patterson, 390 U.S. 102, 126, 88 S.Ct. 733, 746-47, 19 L.Ed.2d 936, 954 (1968). Thus, no findings have been made on this issue such as would be necessary for a dismissal on this ground. Cf. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 497, 62 S.Ct. 1173, 1177, 86 L.Ed. 1620, 1626 (1942).
 
 
 8
 In this appeal, the questions are whether Morton is entitled to review of the declaratory judgment of invalidity on the merits and whether Cardinal can be deprived of its judgment without such review. Under Altvater, the Supreme Court appears to have mandated that an appellate court must review a declaratory judgment which comes to us in the posture of this case. But this is not entirely clear. The questions which I have raised here have not been addressed in this case or in any authoritative precedent I have found, and in my view need to be explored.
 
 IV
 CONCLUSION
 
 9
 Morton objects to this court's action of returning its patents into a state of limbo, having twice had them declared invalid by district courts, and twice having those judgments vacated by this court without any ruling on the merits. Other litigation on the patents is in the wings. Cardinal urges it is entitled to the judgment it obtained on a valid counterclaim at great expense and effort.[9] I conclude that the precedent of this court supporting its action of vacating the invalidity judgment in this case is in error, and I therefore dissent from the denial of in banc rehearing in this appeal. I have not written to offer a definite solution to this problem.[10] I write because I cannot find justification for our Vieau decision either legally or as a "policy". Further, this court has repeatedly denied in banc consideration to alter our "mootness" precedent. The question of how a judgment of invalidity on a declaratory claim should be treated after a finding of no infringement is too important in my view to let pass again. The parties can now look only to the Supreme Court for correction.
 
 
 
 [1]
 Accord Pennwalt v. Durand-Wayland, 833 F.2d 931, 934; 4 USPQ2d 1737, 1745 (Fed. Cir.1987) (in banc), cert. denied, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988) (counterclaim for invalidity declaration dismissed as "moot" and judgment of validity vacated, "there being no indication that Durand-Wayland's cross-appeal on validity extends beyond the litigated claims or the accused devices found to be noninfringing"); Fonar Corp. v. Johnson & Johnson, 821 F.2d 627, 634 n. 2, 3 USPQ2d 1109, 1114 n. 2 (Fed. Cir.1987) (same); Advance Transformer v. Levinson, 837 F.2d 1081, 1084, 5 USPQ2d 1600, 1603 (Fed. Cir.1988) (judgment of invalidity vacated). It is not clear that the majority made the second Vieau finding, but I will assume so
 
 
 [2]
 Under our precedent, the ruling should be "not invalid." Environmental Designs, Ltd. v. Union Oil Co. of Cal., 713 F.2d 693, 699 n. 9, 218 USPQ 865, 871 n. 9 (Fed. Cir.1983), cert. denied, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984)
 
 
 [3]
 It is arguable that a counterclaim for invalidity of asserted claims is even mandatory under Fed.R.Civ.P. 13(a)
 
 
 [4]
 Before Blonder-Tongue, a decree of invalidity was preclusive only between the parties. Even ignoring the licensee estoppel basis of Altvater, its "additional claims or devices" requirement may have been influenced by this restricted, and now antiquated, scope of collateral estoppel
 
 
 [5]
 Vieau is somewhat unusual in that the issue of validity was raised on "cross-appeal" by the winner of a declaratory judgment of a patent's invalidity. However, the cross-appeal was taken because of the district court's failure to hold the patent invalid under 35 U.S.C. § 103, as well as under 35 U.S.C. § 112
 
 
 [6]
 After Blonder-Tongue, the "public policy" import of validity rulings (especially those finding patents invalid) has grown substantially
 
 
 [7]
 The statement made in Altvater concerning its decision in Electrical Fittings that, "To hold a patent valid if it is not infringed is to decide a hypothetical case" is not in conflict. It is the reason for the Court's approval of vacatur at the behest of the defendant. The defendant was not entitled to have that issue resolved on the merits when presented only as an affirmative defense once exculpated from liability on the patentee's charge, but should not be precluded by the judgment from litigating the matter in a subsequent suit. Similarly, in my view, a patentee may be able to obtain vacatur of a holding of invalidity where there is only a patentee's claim of infringement that is defeated by a finding of noninfringement that a patentee chooses not to appeal
 
 
 [8]
 As stated in Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399, 222 USPQ 943, 949 (Fed. Cir.1984), there must be a case or controversy respecting each claim sought to be declared invalid. This requirement is not an issue in this case. There is a case or controversy as to the entirety of the patent because of the nature of the asserted grounds for invalidity
 
 
 [9]
 Nor should we be unmindful of the expense and effort of the district court. Judge Avern Cohn of the Eastern District of Michigan (the Vieau trial judge) stated, in a panel discussion at our most recent Judicial Conference:
 I took six months to write a JNOV, found the patent invalid and not infringed and was very proud of my work product. And when I read that court of appeals opinion and found that my finding of invalidity had been vacated, there was no case or controversy, I was in a state of shock for ten minutes.
 Cohn, Remarks at the Patent Breakout Session of the Tenth Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit 65 (April 30, 1992).
 
 
 [10]
 Others have done so. See, e.g., Rooklidge and Re, Vacating Patent Invalidity Judgments Upon an Appellate Determination of Noninfringement, 72 J. Pat. & Trademark Off. Soc'y 780 (1990)