959 F.2d 948
 22 U.S.P.Q.2d 1231, 23 U.S.P.Q.2d 1362
 MORTON INTERNATIONAL, INC., Plaintiff-Appellant,
v.
CARDINAL CHEMICAL COMPANY, a partnership, W.M. Quattlebaum,
Jr., Dorothy Quattlebaum, and W.M. Quattlebaum, III,
individuals, Cardinal Manufacturing Co., and Cardinal
Stabilizers, Inc., Defendants/Cross-Appellants.
 Nos. 91-1174, 91-1175.
 United States Court of Appeals,
Federal Circuit.
 March 20, 1992.
Rehearing Denied April 17, 1992.
Suggestion for Rehearing
In Banc Declined May 7, 1992.
 
 Gordon R. Coons, Leydig, Voit & Mayer, Chicago, Ill., argued, for plaintiff-appellant. With him on the brief were John E. Resenquist and Jeffrey S. Ward. Also on the brief was Gerald K. White, Morton International, Inc., Chicago, Ill.
 Charles F. Schill, Adduci, Mastriani, Meeks & Schill, Washington, D.C., argued for defendants/cross-appellants. With him on the brief were William O. Sweeny, III, Arthur L. Coleman, Nelson Mullins and Elizabeth R.P. Bowen, Riley & Scarborough, Columbia, S.C.
 Jerome G. Lee, Arlington, Va., was on the brief for amicus curiae, American Intellectual Property Law Ass'n. With him on the brief were William C. Rooklidge and Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, Cal. Also on the brief were Walter N. Kirn and William L. LaFuze, of counsel.
 Brian G. Brunsvold, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., was on the brief for amicus curiae, Atochem North America, Inc. With him on the brief were Herbert H. Mintz, Richard B. Racine and Michael D. Kaminski. Also on the brief was Stanley A. Marcus, Deputy Gen. Counsel--Patents, Atochem North America, Inc., Philadelphia, Pa., of counsel.
 Before MAYER, LOURIE, and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal and cross-appeal are from the December 14, 1990, judgment of the United States District Court for the District of South Carolina, 6:83-889-OK. The patentee, Morton International, Inc., contends that the district court erred in finding its U.S. Patents 4,062,881 ('881) and 4,120,845 ('845) not infringed by Cardinal Chemical Company, et al.; and in concluding that both patents are invalid. Cardinal contends that the district court erred in failing to award attorney fees for an exceptional case under 35 U.S.C. § 285, and that this court should sanction Morton's appeal as frivolous. We affirm the court's judgment in all respects, except we vacate that part of the judgment holding the '881 and '845 patents invalid. We also reject Cardinal's assertion that this appeal is frivolous.
 
 BACKGROUND
 
 2
 The patents in suit are directed to a family of compounds which are used as additives or heat stabilizers for polyvinyl chloride (PVC). The heat stabilizers protect the PVC from decomposition, discoloration, and loss of strength. The particular heat stabilizers disclosed in the '881 and '845 patents are directed to organotin compounds, in particular to organotin mercaptoalkyl carboxylic acid ester sulfides. Only Claim 1 of each patent is at issue.[1] The key limitations of the claims are (1) the bonding of the organotin compound, referred to by the parties as "partial connectivity," wherein a tin atom is bonded to a sulfur atom, the sulfur atom is bonded to a second tin atom, and the second tin atom is bonded to a mercaptoalkyl ester (referred to by the parties as a "reverse ester"); and (2) "the organotin compound [has] an amount of tin within the range from 10 to 42% by weight and an amount of sulfur within the range from 8 to 42% by weight."
 
 
 3
 The '881 and '845 patents have had considerable exposure to the courts, as Morton has filed infringement actions in three separate district courts against different defendants. In the first, Morton filed suit against Argus Chemical Corporation in the United States District Court for the Eastern District of Louisiana. After trial, the district court entered judgment, holding the patents invalid and not infringed. Morton Thiokol, Inc. v. Witco Chemical Corp., et al. No. 84-5685 (E.D.La., filed November 28, 1984).
 
 
 4
 On appeal, we affirmed the district court's judgment of non-infringement and vacated the invalidity judgment, ruling that the affirmance made it unnecessary to review the issue of invalidity. Morton Thiokol, Inc. v. Argus Chemical Corp., 873 F.2d 1451, 11 USPQ2d 1152 (Fed.Cir.1989) (non-precedential).
 
 
 5
 In the second action, the appeal of which is now before this court, Morton again filed suit, this time against Cardinal, alleging that Cardinal sold mixtures containing the claimed compounds. After trial, the district court made lengthy findings and conclusions and held that the claims were invalid under 35 U.S.C. § 112 because the specification was not enabling and the claims were indefinite. It further held that Cardinal's heat stabilizer products did not infringe those claims, either literally or under the doctrine of equivalents. Morton and Cardinal now appeal and cross-appeal this judgment, requiring us to review once more the infringement and/or validity of the '881 and '845 patents.[2]
 
 DISCUSSION
 I.
 
 6
 A finding of literal infringement requires that the asserted claims, as properly construed, read on the accused product. Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 758, 221 USPQ 473, 477 (Fed.Cir.1984). The patentee has the burden of proving infringement by a preponderance of the evidence. SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed.Cir.1988). The first step in determining infringement is thus to construe the claims. Fonar Corp. v. Johnson & Johnson, 821 F.2d 627, 631, 3 USPQ2d 1109, 1112 (Fed.Cir.1987), cert. denied, 484 U.S. 1027, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988). The second step is to decide whether each limitation in the properly construed claims is found, either literally or equivalently, in the allegedly infringing compounds. Id. Although claim interpretation is a question of law, subject to de novo review on appeal, the district court's ultimate finding on infringement, as well as subordinate findings relating to proper claim construction, are issues of fact, reviewed under a clearly erroneous standard. See H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 389, 2 USPQ2d 1926, 1929 (Fed.Cir.1987) (interpretation of a claim may depend on evidentiary material about which there is a factual dispute); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1269-70, 229 USPQ 805, 811 (Fed.Cir.1986) (determination of infringement is a question of fact), cert. denied, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).
 
 
 7
 Morton argues that the district court erred in interpreting Claim 1 and that the court's misinterpretation resulted in errors in the court's conclusions as to both infringement and invalidity. More particularly, Morton claims that the district court misconstrued the claims by restricting the type of evidence Morton could use to show the existence of the claimed compound in Cardinal's mixture to: (1) isolation and (2) nuclear magnetic resonance (NMR) data showing simultaneous tin-tin coupling and Carbon-13 splitting as the only method to prove the partial connectivity of Claim 1. We disagree.
 
 
 8
 On review of the record, it is clear that the district court did not construe Claim 1 to require isolation. The court merely required Morton to identify the claimed compounds in Cardinal's mixtures to confirm their existence. The court specifically found that "[n]o amount of testing by equipment or methods available [ ] can identify, isolate or separate any compound claimed by the '881 or '845 patents." Morton's reliance on In re Breslow, 616 F.2d 516, 205 USPQ 221 (CCPA 1980), to show error in the district court's finding is misplaced.
 
 
 9
 In Breslow, the compound in question could not be isolated, but was conceded to exist. The court expressly recognized that the existence of the compound was not in question. Id. at 518, 205 USPQ at 224. In the present case, however, the existence of the claimed partial connectivity in the Cardinal mixture is the essence of the dispute, and its existence has never been established. The court specifically acknowledged that under Breslow, "it is not imperative that the compounds be isolated in order to be claimed." The court, in determining whether the claims were infringed, used isolation as simply a possible means of such proof.
 
 
 10
 At trial, one of the ways Morton suggested one could analytically prove the existence of the claimed partial connectivity in Cardinal's mixtures was high-resolution Tin-119 NMR. However, the court observed the conflicting testimony of Morton's expert, Dr. Mesch, and Cardinal's NMR expert, Dr. Ellis, and found Dr. Ellis's more credible. The court found Dr. Mesch's identification of "at least eight peaks in a spectrum of the Cardinal product as possibly having the claimed [partial connectivity]" discredited by Dr. Ellis's conclusions that some of Mesch's identified peaks did not indicate the partial connectivity, but were caused by other elements present in the sample. The court determined that:
 
 
 11
 even after Morton and Cardinal have each expended extraordinary sums of money on state of the art testing, these organotin components of the accused Cardinal products cannot be identified as containing the claimed connectivity as specified in the '881 and '845 patents.
 
 
 12
 It further determined that there is "no objective support for the actual existence of the claimed connectivities." Therefore, the court had no reason to determine whether Cardinal's product contained the specified weight percentages of tin and sulfur claimed in the patents at issue.
 
 
 13
 Morton also argues that its building block theory shows the existence of the claimed partial connectivity, and that the district court failed to consider it. This theory is essentially that the Cardinal stabilizers contain four moieties-butyltin, sulfide, mercaptoethyltallate, and mercaptoethanol--and that these structures or "building blocks" can combine to form particular compounds, at least some of which contain the claimed connectivity. The compounds containing the claimed connectivity are assumed to be indicated by certain portions of the NMR spectra.
 
 
 14
 The record shows that the district court considered and rejected Morton's building block theory, concluding that the theory did "not demonstrate the existence of claimed compounds in Cardinal's product which is a complex mixture resulting from Cardinal's process." Even assuming Morton's position that certain molecular fragments can be positively identified in the NMR spectra as being other compounds (non-claimed compounds and prior art stabilizers), our review of the record shows that it is mere speculation to assume that what remains is a claimed compound, i.e., compounds that have the partial connectivity. Cardinal's evidence, based on expert testimony from Drs. Story and Eisch, showed that by performing the reactions allegedly taught in the '881 patent, one skilled in the art would not necessarily obtain the compounds containing the claimed partial connectivity. In fact, Dr. Story determined that a number of compounds within the claimed ranges of the tin and sulfur percentages are theoretically possible, but that they did not have the weight ranges of Claim 1. Morton's theory still results in a number of unknown compounds remaining in the spectra. Thus, there is only a possibility of the existence of the claimed compounds in the spectra, and that was not convincing enough to the court to prove infringement.
 
 
 15
 In summary, to show infringement, Morton was required to prove that every limitation in the claims was met, including the limitation that the partial connectivity existed in Cardinal's stabilizers. The district court found that Morton failed to prove that Cardinal's products contained the claimed partial connectivity. This finding was not clearly erroneous.
 
 
 16
 Since we have affirmed the district court's holding that the patents at issue have not been infringed, we need not address the question of validity. Vieau v. Japax, Inc., 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987). Accordingly, we vacate the holding of invalidity.
 
 
 17
 Cardinal asserts in its cross-appeal that the district court erred in failing to award attorney fees and in failing to find this case "exceptional" under 35 U.S.C. § 285, because, inter alia, Morton effectively retried a case that it earlier lost. Morton Thiokol, Inc. v. Witco Chemical Corp., et al., No. 84-5685 (E.D.La., filed November 28, 1984). Whether a case is exceptional or not is a factual determination subject to appellate review under the clearly erroneous standard. Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1583, 226 USPQ 821, 824 (Fed.Cir.1985). At the end of the trial, the district court acknowledged that "[t]his case is close"; then, in a lengthy and well-reasoned opinion, the court specifically found that "[d]espite having some serious reservations as to Morton in fact retrying the Argus case, this court does not find that this action constitutes an exceptional case under 35 U.S.C. § 285." We find no clear error in this result.
 
 
 18
 Based on reasoning similar to its arguments on the exceptional case issue, Cardinal also asks this court to sanction Morton for a frivolous appeal. We decline to do so. Even though we agree with the district court's finding against Morton on the question of infringement, we accept that Morton did have an argument that was new to this case, one that apparently it was not in a position to raise earlier. Thus, based on a review of the record, we determine that Morton had a basis in law and fact for filing suit and bringing this appeal. Cf. Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1554-55, 220 USPQ 193, 203-04 (Fed.Cir.1983). Thus, we affirm the district court's denial of attorney fees and decline to impose sanctions for a frivolous appeal. We also see no merit in Cardinal's contention that the district court failed to consider evidence of Morton's inequitable conduct before the Patent and Trademark Office. The record reveals that the district court considered but rejected the evidence.
 
 CONCLUSION
 
 19
 For the foregoing reasons, the district court's judgment is affirmed-in-part and vacated-in-part.
 
 COSTS
 
 20
 Costs to cross-appellants.
 
 
 21
 AFFIRMED-IN-PART and VACATED-IN-PART.
 
 LOURIE, Circuit Judge, concurring:
 
 22
 I concur with the result of the panel's decision. I write separately to differ with the panel in its decision to review the judgment of noninfringement rather than that of invalidity. The case before us illustrates why, in an appropriate case, we should review an invalidity judgment first, and, if we affirm, then vacate or simply not rule on the infringement issue.
 
 
 23
 Both parties, including amici, ask that we review our "policy" stated in Vieau v. Japax, Inc., 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987) that, when affirming a district court judgment on noninfringement, we vacate the district court's invalidity conclusion. In several recent cases in which a patent has been found invalid and not infringed, this court has affirmed the holding of noninfringement and vacated the holding of invalidity. E.g., Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 686, 14 USPQ2d 1942, 1950 (Fed.Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990); Environmental Instruments, Inc. v. Sutron Corp., 877 F.2d 1561, 1566, 11 USPQ2d 1132, 1136 (Fed.Cir.1989); Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 848 F.2d 179, 183, 6 USPQ2d 2017, 2020 (Fed.Cir.1988). This practice has been criticized as wasting public and private resources that have been expended in holding a patent invalid. See John Donofrio, The Disposition of Unreviewable Judgments by the Federal Circuit, 73 JPTOS 462 (1991); Joseph R. Re & William C. Rooklidge, Vacating Patent Invalidity Judgments Upon an Appellate Determination of Noninfringement, 72 JPTOS 780 (1990).
 
 
 24
 When a patent has been finally adjudicated to be not infringed and further appellate review is not possible, there generally is no longer a case or controversy and the question of validity becomes moot. Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450, 57 USPQ 285, 288 (1943) ("To hold a patent valid that is not infringed is to decide a hypothetical case.").[1] Conversely, when a patent is similarly adjudicated as invalid, the infringement issue becomes moot. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, 65 USPQ 297, 299 (1945). However, because this court is not a court of last resort, a holding of either invalidity or noninfringement by our court does not render the case moot because it is not over. Therefore, when both infringement and validity issues are presented on appeal, we can base our affirmance on both grounds, thereby leaving a complete judgment available for review by the Supreme Court.[2] We are not compelled to address both or to address them in any order. The power to choose one or the other is not a matter of policy, but of discretion, considering the circumstances of the individual case. If we agree with the district court that no past, present, or future threat of infringement of a patent exists, there may be no need to address the issue of validity. Likewise, if we agree with the district court's determination that a patent is invalid, there may be no need to address issues with respect to infringement.[3] Our affirmance on either ground may render a decision as to the other unnecessary. Here, the circumstances illustrate that this court should answer the invalidity question, but need not deal with infringement.
 
 
 25
 The patents involved in this case have been through two full bench trials and are now before this court for the second time. As the Supreme Court noted in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-29, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788, 169 USPQ 513, 519 (1971), there is "an arguable misallocation of resources" in permitting "a litigant more than one full and fair opportunity for judicial resolution of the same issue."
 
 
 26
 If we vacate the invalidity holding here, as the panel has decided, this patentee will have a third opportunity to defend a patent that twice has been held invalid by a district court. This is not consistent with Blonder-Tongue and all parties lose. Morton, who has twice sued under its presumptively-valid patent and lost, still may feel that it can and must prosecute other suits. The presumption of validity has been shaken, but not destroyed. The public does not know whether it can practice the invention allegedly covered by a patent twice held invalid by a district court, but partially resurrected by this court. Even Cardinal, apparently a winner here because we have affirmed a finding of noninfringement, does not know whether this patent will obstruct future plans it may have in the field. Moreover, there is a public interest involved in the question of the validity of a patent. Sinclair, 325 U.S. at 330, 65 S.Ct. at 1145, 65 USPQ at 299 ("of the two questions [non-infringement and invalidity], validity has the greater public interest").
 
 
 27
 In some cases, judicial economy may dictate that we affirm on noninfringement and vacate as to validity, but here, such action would add additional expense to the judicial costs, considering the multiple suits which Morton has brought. Bringing a patent action is an expensive and time-consuming endeavor, as is defending one.
 
 
 28
 All parties are entitled to a decision affirming or reversing the trial court's holding of invalidity of these patents so that they can plan their future affairs accordingly. We can and should reach that issue.
 
 
 29
 35 U.S.C. § 112 requires that an invention be described "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same." At trial, Cardinal had the burden of proving lack of enablement of the '881 and '845 patents by clear and convincing evidence. See 35 U.S.C. § 282. We review the court's determination of lack of enablement as a question of law. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1268, 229 USPQ 805, 811 (Fed.Cir.1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).
 
 
 30
 The specification purports to teach, with over fifty examples, the preparation of the claimed compounds with the required connectivity. However, on review of the record, there is considerable evidence showing that those skilled in the art could not make the claimed compounds using the procedures of the specification, and no evidence that such compounds even exist. The district court found that
 
 
 31
 [e]ven with the aid of sophisticated analytical instrumentation and the use of model systems which attempt to provide the compounds claimed in the '881 patent, however, there is no evidence that such compounds exist. The clear and convincing evidence has shown that the examples of the '881 patent do not produce the postulated compounds. Rather, the examples and procedures produce a complex mixture of alkyltin mercaptides and alkyltin sulfides. The evidence established that a number of these are prior art compounds known to be useful as heat stabilizers.
 
 
 32
 The fifty-odd examples in the patent obviously teach something, but the evidence shows that they did not teach what was allegedly defined in the claims. Because Cardinal's clear and convincing evidence was not rebutted by Morton, such as by showing that the examples do indeed produce the compounds containing the claimed connectivity, I see no error in the district court's determination.
 
 
 33
 The statute also requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. Since the claims at issue here are not sufficiently precise to permit a potential competitor to determine whether or not he is infringing, I would also agree with the district court's determination that the claims are invalid for failure to satisfy the "definiteness" requirements of § 112, 2nd paragraph.
 
 
 34
 Given such a determination of invalidity, I would not address that part of the district court's judgment regarding noninfringement.
 
 
 
 [1]
 Claim 1 of the '881 patent is representative for our purposes:
 
 
 [1]
 A monoorganotin or diorganotin mercaptoalkyl ester of a carboxylic acid or mercapto hydroxyalkyl ester of a carboxylic acid mono or polysulfide useful as a stabilizer for improving the resistance to deterioration of vinyl chloride polymers when heated at 350? F, containing at least one tin ato [sic, atom] having one to two hydrocarbyl groups having from 1 to 20 carbon atoms and selected from the group consisting of alkyl, aryl, cycloalkyl, aralkyl and alkenyl and linked to the tin through carbon, at least one mercaptoalkyl ester of a carboxylic acid group linked to tin through the sulfur of the mercaptoalkyl group and at least one mono or polysulfide sulfur group bonded exclusively to tin, the organotin compound having an amount of tin within the range from 10 to 42% by weight and an amount of sulfur within the range from 8 to 42% by weight
 
 
 [2]
 A third action, filed by Morton against Atochem North America, Inc. in the United States District Court for the District of Delaware for infringing the same Morton patents, is in the discovery phase. Morton International, Inc. v. Atochem North America, Inc., No. 87-60-CMW (D.Del., filed February 9, 1987). Atochem has filed a brief as amicus curiae in the present appeal, urging the affirmance of the district court's judgment of invalidity. The American Intellectual Property Law Association has also filed a brief as amicus curiae
 
 
 [1]
 However, when a case arises consisting of a counterclaim for invalidity which is the subject of a cross-appeal or a separate appeal and the controversy between the parties extends beyond the litigated claims or the accused devices, the invalidity issue will not be moot. Altvater, 319 U.S. at 363-64, 63 S.Ct. at 1117-18, 57 USPQ at 288; Vieau, 823 F.2d at 1517-21, 3 USPQ2d at 1100-03 (Bennett, J., concurring)
 
 
 [2]
 On a number of occasions, this court has reviewed, in precedential cases, both holdings. E.g., Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1280-81, 230 USPQ 45, 45 (Fed.Cir.1986); Shelcore, Inc. v. Durham Indus., 745 F.2d 621, 630, 223 USPQ 584, 591 (Fed.Cir.1984)
 
 
 [3]
 Indeed, in a number of precedential cases, this court ruled on invalidity or unenforceability and either did not reach or vacated the non-infringement determination. E.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 808 n. 4, 15 USPQ2d 1481, 1483 n. 4 (Fed.Cir.1990); Dana Corp. v. IPC Ltd., 860 F.2d 415, 417, 8 USPQ2d 1692, 1694 (Fed.Cir.1988), cert. denied, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989); A.B. Dick Co. v. Burroughs Corp., 798 F.2d 1392, 1393, 230 USPQ 849, 850 (Fed.Cir.1986)